JUAN ENRÍQUE TORRES, Plaintiff and Appellee, *v.* SUCESIÓN J. SERRALLÉS, Defendant and Appellant.

No. 7934. Argued April 3, 1940.—Decided October 24, 1940.

*F. Parra Capó* and *Leopoldo Tormes García* for appellant. *E. Arjona Siaca* for appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

██ Appellant was the defendant in a suit for an injunction. The first, second, and fifteenth assignments of error are in substance that the district court erred:

In awarding damages to petitioner, without any amendment of the prayer, upon oral request for such damages made at the trial.

In not ordering petitioner to specify in detail the damages sustained and the amount thereof.

In not specifying in the judgment the different elements of damages, and the amount of each item, thereby depriving respondent of an opportunity to question the correctness of such estimates, or to accept some and to seek a reversal of others.

Section 684 of the Code of Civil Procedure (1933 ed.) reads as follows:

"If an injunction is granted without notice to the person enjoined, he may apply, upon reasonable notice, to the judge who

granted the injunction, or to the court in which the action was brought, to dissolve or modify the same. The application may be made upon the complaint or the affidavit on which the injunction was granted, or upon the affidavit on the part of the person enjoined, with or without the answer. If the application is made upon affidavits on the part of the person enjoined, but not otherwise, the person against whom the application is made may oppose the same by affidavits or other evidence in addition to that on which the injunction was granted. In all actions wherein an injunction or restraining order has been granted, if it be made to appear to the court that great damage will be suffered by the person enjoined, in case the injunction is continued, and that the person in whose behalf it issued can be fully compensated for any damages he may suffer by reason of the continuance of the acts enjoined during the pendency of the litigation, the court, in its discretion, may dissolve or modify the injunction, upon the person enjoined giving a bond with sureties to be approved by the judge, and in such amount as may be fixed by the court or judge, conditioned that such enjoined person will pay all damages which the person in whose behalf the injunction issued may suffer by reason of the continuance, during the litigation, of the acts complained of. Upon the trial the amount of such damages must be ascertained, and in case judgment is rendered for the person in whose behalf the injunction was granted, the amount fixed as such damages must be included in the judgment together with reasonable attorney's fees. And to satisfy such judgment execution may issue against the property of the other party and the sureties on the bond."

By the furnishing of such a bond respondent had obtained the dissolution of a restraining order and had avoided the issuance of a temporary injunction. As a result, the work which petitioner sought to enjoin had been completed before the case came on to be heard. At the threshold of the trial, petitioner brought the foregoing facts to the attention of the court and stated in substance that:

He had not at any time waived his right to a permanent injunction but the situation had changed and the assessment of damages would be proper. Whether the court should grant a permanent injunction or award damages, was a matter of judicial discretion both under the local law and the authorities.

The judge asked whether damages had been mentioned in the petition. Petitioner answered that damages had been mentioned. The suit was to enjoin the work. Damages had been alleged as a basis for the remedy but there was no prayer for the recovery of damages. The situation had changed. The work had been completed. Hence, damages could be proved without the need of a specific averment to that effect. Respondent admitted—petitioner continued—that petitioner had alleged a certain amount of damages. Petitioner, however, was not bound by the amount—$2,000—mentioned by respondent in its last answer; but that furnishes a basis for the consideration by the court of the question of damages in connection with the averments of the petition. Here petitioner read section 684 of the Code of Civil Procedure, *supra,* invoked the general principles of equity jurisprudence, and read from 32 C. J. 385, section 650.

The judge directed that the issue be clearly stated for the purposes of the record. Petitioner said that while he had not renounced his right to a permanent injunction—notwithstanding the fact that the court might deem the granting of an injunction improper because the acts sought to be enjoined had ceased—he desired and requested that the court should proceed to the award and assessment of the damages sustained by reason of respondent's acts enumerated in the petitions as the grounds for an injunction.

The judge said that respondent had a right to make such statement as he might desire. Respondent said that the law, of course, left open to the court an alternative, but respondent understood that since he had furnished the bond for the dissolution of the restraining order, petitioner should have included, by amendment of his petition, a prayer for damages because that aspect of the matter was vague and indefinite. Here respondent read from the prayer. Hence, respondent understood that upon dissolution of the restraining order, petitioner should have added a prayer for damages.

Respondent then discussed at some length another matter said to have some bearing on the question as to whether damages should be considered in the suit for an injunction or should be made the subject of another action. The judge said that petitioner had raised the same question. Respondent said that if the court accepted petitioner's theory, the court would have to hear evidence as to the propriety of a permanent injunction. The judge agreed, and said that petitioner had not waived his right to a permanent injunction. Petitioner said: "Then we are agreed". The judge asked if that meant that the petition should stand as it was. Petitioner answered: "That is right," adding that in a petition for injunction the amount of damages could not be alleged when it was difficult to estimate the same. Here petitioner read from the petition.

The judge inquired whether petitioner meant that he would leave the petition as it was, and petitioner answered: "Yes". The judge said that was a question which should remain open for discussion; in order not to lose time the court would take into consideration petitioner's statements including the reservation as to the non-waiver of his right to a permanent injunction and his request for a judgment in the alternative for damages. The judge then asked whether that was the gist of the matter. Petitioner answered that it was. The judge said that subject to those reservations the trial would proceed. The question as to what was the proper remedy would be discussed when the court came to consider the case on its merits. The parties would present their briefs, the court would consider them and arrive at a conclusion. Petitioner then called his witnesses to whom the oath was administered. Respondent was content to say that he had no witnesses present.

At the close of the trial respondent stated that the parties had agreed to file briefs. Petitioner agreed, but asked that the court should limit the questions to be discussed. Respondent objected. The judge said that the principal question was

whether damages could be recovered in the action. Both parties agreed. Respondent admitted that damages could be recovered but was of the opinion that when damages were to be awarded in a suit for injunction, damages should be alleged. That had not been done. Petitioner said they would discuss that question in the briefs.

The judge asked what time would be needed. Petitioner said he would need fifteen days after a "view" by the court. Respondent said it would need another fifteen days. Petitioner asked for five days in which to reply if necessary. The court gave petitioner fifteen days, respondent another fifteen days and petitioner an additional five days in which to reply. Respondent filed no brief in the district court.

Respondent was not misled nor prejudiced in any way by petitioner's failure to amend the prayer of his petition so as to include damages. The brief for appellant adds little or nothing to the mild expression of opinion by respondent's counsel in the district court. It fails to satisfy us that the district court erred in awarding damages, notwithstanding the absence of a formal amendment; or that the error if any would justify a reversal. Nor, in the absence of any specific motion or request for an order requiring petitioner to specify in detail the damages sustained and the amount thereof, do we find any error in the omission of the court to direct such an amendment of the petition, or in not specifying in the judgment the different elements of damages and the amount of each item.

█ The third and fourth assignments are that the district court erred:

In holding that respondent, in order to effect the changes made in its irrigation canal, had to institute an administrative condemnation proceeding, since such changes did not involve the appropriation of more land than that already occupied by the old canal.

In holding that respondent needed petitioner's permission in order to effect the changes made in the canal without the appropriation of more land than that already occupied for years.

From the findings we gather the following facts:

The old irrigation canal originally constructed under a franchise granted in 1872 was of masonry. It was practically demolished and reconstructed by respondent in 1931. Alterations were made in the intake. The canal was rebuilt on the original foundation. The height and depth were increased. Its capacity was more than doubled. The intake was altered so as to admit the flow of all summer and winter waters through the canal to eight of respondent's properties. The old canal had furnished water for only three of these properties. The course of the canal was altered at a point near petitioner's dwelling. No preliminary proceeding was instituted. There was no satisfactory evidence that petitioner had consented to the reconstruction of the canal. Respondent's rights to use the waters from the canal had emanated from a government franchise granted September 30, 1872, to the former owner of one of respondent's properties, and from an agreement among riparian owners evidenced by a notarial instrument of December 4, 1844. The fifth clause of that agreement established the order in which the waters should be used and contained a stipulation to the effect that another automatic water meter would be installed to admit the flow of 25 of the 100 parts mentioned in "article 2" belonging to the properties, Ana María, Rita, and Mallorquina. The second clause provided that the surplus summer rains and their natural increase after deduction of the preferential 76 liters and 58 centiliters would be divided into 100 equal parts of which 22½ parts would go to the property Vista Alegre; 25 parts to Rita, Ana María, and Mallorquina; 10 parts to Teresa; 5 parts to Unión, and 37½ parts to Mercedita, Laurel, Fe, Paraíso, and Bronce. A sixth clause provided that the intake for each of such uses would be that already established in the basin formed by the different properties using the waters of the Inabón River.

By reason of the reconstruction of the canal, petitioner had suffered damages due to the large quantities of earth thrown on his land as a result of excavations, the destruction of coffee trees, the loss of the use of a part of the land, the accumulation of stones from the old canal, the mixing of concrete at different places on the property, depreciation in the value of the property, the enlargement of the servitude by doubling the depth of the canal,—all without petitioner's consent, without the institution of any previous condemnation or of any proper proceeding.

If the owner of a servient estate refuses his consent to the establishment of a servitude of aqueduct "within another pre-existing aqueduct" the establishment of the additional servitude may be accomplished by a formal proceeding "after indemnification, if a larger zone of ground should be occupied". (Article 84 of the Law of Waters.) This article does not authorize the establishment of an additional servitude, without the consent of the owner of the servient tenement and without the formality of any proceeding, by building upon the original foundation of a canal so as to double its capacity by increasing the height of its walls and thereby further obstructing the free passage from one part of the servient estate to another and increasing the risk of accident or of death by drowning in the case of children as well as in the case of animals, and thus depreciating the value of the servient estate even though no "larger zone of ground should be occupied".

"When the owner of an aqueduct which crosses land belonging to another requests permission to increase its size in order that it may receive a larger amount of water, the same rules shall be observed as for its establishment". Art. 94, Law of Water, Comp. Stat. 1911, page 472.

Article second of Chapter II, Title VII, is entitled "Servitudes relating to waters". "The establishment, extent, form and conditions of the servitudes of waters to which this article refers, shall be governed by the special law relating thereto *in so far as is not provided for in this Code*". (Italics ours.) Section 499 of the Civil Code (1930 ed.)

"The owner of the dominant tenement may make, at his own expense, on the servient tenement, all works necessary for the use and preservation of the servitude, *but without altering it or rendering it more onerous*". Section 479 of the Civil Code (1930 ed.). See also 4 Manresa, *Comentarios al Código Civil*, pp. 625, 626 (1931 ed.).

"No person shall be deprived of his ownership, except it be by a competent authority and for a justified purpose of public utility, and after having been properly indemnified.

"If this requirement has not first been complied with, the district courts shall protect, and, in proper cases, replace the owner in possession of the expropriated property.

"The indemnification shall comprise, not only the value of the thing whereof the owner is deprived, but also a compensation for any damages and injuries which may be caused him by the deprivation of the property." Section 282 of the Civil Code (1930 ed.).

"Whoever wishes to make use of water of which he can dispose upon a tenement belonging to him, has the right to cause it to pass through the intermediate tenements, with the obligation of indemnifying their owners, as well as those of the lower tenements upon which the water may filter or descend." Section 493.

"A person who by an act or omission causes damage to another when there is fault or negligence shall be obliged to repair the damage so done." Section 1802.

The old canal was a servitude established for the benefit of three dominant tenements. Respondent, by enlarging its capacity, sought to convert it into a servitude for the benefit of eight dominant tenements. In order to enlarge the capacity of the canal, the original dimensions thereof were greatly altered, the height of its walls and the depth of the water were greatly increased to the detriment and depreciation in value of the servient tenement, and the location of a part of the canal itself upon the ground was changed. All of this was done without the consent of the owner of the servient tenement, and without the formality of any proceeding either administrative or judicial.

The district court did not err as alleged in the third and fourth assignments.

The fifth assignment is that the district court erred in ignoring the fact that petitioner had agreed to the passage through the canal of the waters of the nine concessions and to the work done,—the disagreement between the parties having arisen when the work was in its early stages and petitioner, with knowledge thereof, wanted respondent to

assume the obligation of paying $2,000 as further damages as opposed to respondent's offer to pay any damages that might be sustained, and to furnish proper security for such obligation.

What the district judge said, as we have already pointed out, was that there was no satisfactory evidence that petitioner had consented to the reconstruction of the canal. While the question was perhaps debatable and might have been differently decided if respondent had filed his brief in the district court, we find no such manifest error in the weighing of the evidence as to require a reversal.

■ The sixth assignment is that the district court erred in not viewing the canal a second time, as proposed by respondent at the close of the trial, agreed to by petitioner and promised by the district judge; the fixing of the date having been left to his discretion.

The district judge understood that the whole question of the second view as well as the date thereof had been left by the parties to his discretion. Whether he was mistaken in this or not and whether or not he had agreed to the proposed second view, he still had some discretion as to whether he should again visit the canal, and we find no abuse of that discretion in his subsequent conclusion that a second view was unnecessary.

■ The seventh, ninth, and fourteenth assignments are that the district court erred:

In affirming that respondent's right to a servitude emanated from the concession granted by the Spanish Government, September 30, 1872, for the "benefit" of the property Ana María as modified by the agreement among riparian proprietors executed December 4, 1884; and in affirming that the changes made in the irrigation canal violated the concession of 1872 and the agreement of 1884.

In considering that the limitations established by the concession of 1872 and by the agreement of 1884, afforded petitioner any protection in the matter of the servitude, the fact being that such limitations were established solely and exclusively as a safeguard to the rights of the riparian owners.

In affirming that the concession of 1872 and the agreement of 1884 had been violated by making the servitude more onerous, imposing upon the servient tenement a new servitude without the consent of the owner, in violation of his property rights, without having instituted the proceeding indicated by articles 94, 185 and 186 of the Law of Waters, and in violation of section 282 of the Civil Code.

These are not pivotal points. The errors, if committed, would not amount to sufficient grounds for reversal.

■ The eighth assignment is that the district court erred in considering as applicable section 479 and others of the Civil Code (1930 ed.) relating to servitudes in general, while the law which should control is the Law of Waters and its rules as to the right of servitudes. We find no conflict between section 479 and any of the provisions of the Law of Waters relied on by appellant. In the absence of any such conflict—to say the least—we see no reason why the general principles underlying section 479 and others of the Civil Code should not govern a case of this kind. See also section 479, *supra,* and 4 Manresa, *Comentarios al Código Civil,* p. 711 (1931 ed.).

The tenth, eleventh, twelfth, and thirteenth assignments are, in substance, that the district court erred:

In finding that the change in the course of the canal was prejudicial to petitioner.

In denying respondent's right to destroy the shrubbery along side the canal.

In finding that a part of the land had been rendered useless by the accumulation of earth, and mixing of concrete.

In finding that the property had depreciated in value as the result of a supposed enlargement of the servitude.

The questions here sought to be raised, as developed in the brief for appellant, do not demand serious consideration.

The judgment appealed from must be affirmed.